UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VINCENT DANIEL HOPPER, a/k/a
ANTOLIN ANDREW MARKS,

        Plaintiff,

        v.

MARVEL L. MORRISON, *et al.*,

        Defendants.

Case No.  C06-5058FDB

REPORT AND
RECOMMENDATION

Noted for October 6, 2006

This case has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4. The matter is before the court on defendants' motions to dismiss (Doc. 16 & 25). After reviewing the motion, plaintiff's response, and the remaining record, the Court should dismiss Plaintiff's claims and causes of action.

<u>BACKGROUND INFORMATION</u>

Plaintiff is currently being held in custody pending the outcome of a deportation proceeding. *See* C05-1812RSL (On August 18, 2005, petitioner was served with a Warrant for Arrest of Alien, a Notice of Custody Determination, and a Notice to Appear, placing petitioner in removal proceedings and charging petitioner as removable for entering the United States without being admitted or paroled, and for reentering the United States after being ordered deported without being admitted or paroled).

On January 24, 2006, Plaintiff submitted a complaint to the Clerk alleging he has been subjected to cruel and unusual punishment while being detained for the previous five months at the Northwest

Detention Center ("NDC"), which is a immigration detention center located in Tacoma, Washington, and privately operated and managed by the defendant corporations.  The caption notes that his claims are brought pursuant to 28 U.S.C. § 1983, Bivens, and the Federal Tort Claims Act.  Plaintiff has named the following defendants in his complaint under the title "PARTIES": (i) John Does 1-13, other unnamed cooks at NDC, in their individual capacities ; (ii) Mr. Shine, a Cook at the NDC, in his individual capacity; (iii) Mr. Wilson, also a Cook at the NDC, in his individual capacity; (iv) Marvel Morrison, a Dietician for the Canteen Corporation, in his or her personal capacity; (v) the Bureau of Immigration and Customs Enforcement, in its official capacity; (vi) the Canteen Corporation Services (the Compass Group USA, Inc.); (vii) the Northwest Detention Center, in its personal capacity; and (viii) Warden G. Wigen, in his individual and official capacity.  Elsewhere in the Complaint, Plaintiff names additional defendants, including Geo Corporation, Lt. Rogge, the Department of Health Services, Dr. Smith, and the Northwest Detention Center.

Plaintiff claims he has been denied necessary medical care and not been given adequate nutrition during the five months he has been in custody at the NDC.  In addition, the Complaint states Defendant Canteen Services overcharges the detainees for supplies and food items it sells at the facility.  Plaintiff seeks general damages in the amount of $480,000.   He also seeks injunctive relief, including a dietician employed at the NDC facility, changes in medical services policies, immediate evaluation and testing by certain types of physicians, being allowed to have and use personal cosmetics, assessment of Rico charges against the Canteen Corporation for the alleged overcharging, having the cooks comply with Plaintiff's dietary needs, and prohibiting interference from institutional officials with other detainee's ability to file and join lawsuits.

Presented before the court are two motions to dismiss.  The first motion is submitted on behalf of the Bureau of Immigration and Customs Enforcement and the U.S. Department of Health Services ("Federal Defendants"), (Doc. 16).  Defendants argue (i) the court does not have jurisdiction over federal agencies, (ii) the court should dismiss all potential claims brought under 28 U.S.C. § 1983 because Plaintiff has not alleged any Federal Defendant acted under color of state law, (iii) the court lacks jurisdiction over government officers named in his or her official capacity as it is essentially a suit against the federal government, which enjoys sovereign immunity, and (iv) the court lacks jurisdiction of the Federal

1  Defendants under the Federal Tort Claims Act.

2  The second motion to dismiss is brought by Compass Group USA, Inc (incorrectly identified in the

3  Complaint as Canteen Corporation Services), Marvel Morrison, Jack Wilson, and Kelly Shines, collectively

4  referred to as the "Canteen Defendants" (Doc. 25).   The Canteen Defendants argue the court should

5  dismiss Plaintiff's claims against them because (i) the court lacks jurisdiction over the claims because

6  plaintiff fails to show defendants acted under color of state law, and (ii) alternatively, Plaintiff has failed to

7  state a valid claim against the Canteen Defendants.

8  ## DISCUSSION

9  *A. JURISDICTION*

10  Both motions to dismiss raise the issue of jurisdiction, based on the argument that plaintiff cannot

11  maintain a civil rights suit brought pursuant to 28 U.S.C. § 1983 against federal employees or federal

12  agencies.  Actions against federal agencies essentially must be brought against the United States as

13  provided by 28 U.S.C. §§ 1346(b) and 2672.  Other than remedies provided by 28 U.S.C. §§1346 & 2672

14  against the United States, other civil actions or proceedings for money damages are precluded.  28 U.S.C.

15  § 2679.

16  Section 1983 actions are limited to claims brought against persons acting under color of state law.

17  In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (l) the conduct complained

18  of was committed by a person acting under color of state law and that (2) the conduct deprived a person of

19  a right, privilege, or immunity secured by the Constitution or laws of the United States.  Parratt v. Taylor,

20  451 U.S. 527, 535 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327 (1986).  Section

21  1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present.

22  Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

23  Civil rights actions brought against federal entities was discussed by the Supreme Court in the case

24  of Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).  In Bivens, the Supreme Court

25  held that there was an implied private action for damages against individual federal officials for violation of

26  constitutional rights in limited circumstances.   In Correctional Services Corp. v. Malesko, 534 U.S. 61

27  (2001), the Supreme Court addressed the issue of how to apply the Bivens doctrine in the context of an

28  action by a federal inmate against a private prison, similar to the case at hand.  The Court ruled that the

1    <u>Bivens</u> doctrine did not apply to claims brought against the company that managed and operated the

2    federal prison.  <u>Malesko</u>, 534 U.S. at 74.  The Court discussed in detail the policies supporting its decision

3    in <u>Bivens</u> and the differences in the facts of <u>Malesko</u>, it wrote:

> Nor are we confronted with a situation in which claimants in respondent's shoes lack effective remedies. Cf. *Bivens*, 403 U.S., at 410, 91 S.Ct. 1999 (Harlan, J., concurring in judgment) ("For people in Bivens' shoes, it is damages or nothing"); *Davis*, 442 U.S., at 245, 99 S.Ct. 2264 ("For Davis, as for Bivens, it is damages or nothing" (internal quotation marks omitted)). It was conceded at oral argument that alternative remedies are at least as great, and in many respects greater, than anything that could be had under *Bivens*. Tr. of Oral Arg. 41-42, 43. For example, federal prisoners in private facilities enjoy a parallel tort remedy that is unavailable to prisoners housed in Government facilities. See Brief in Opposition 13. This case demonstrates as much, since respondent's complaint in the District Court arguably alleged no more than a quintessential claim of negligence. It maintained that named and unnamed defendants were "*negligent* in failing to obtain requisite medication ⋯ and were further *negligent* by refusing ⋯ use of the elevator." App. 12 (emphasis added). It further maintained that respondent suffered injuries "[a]s a result of the *negligence* of the Defendants." *Ibid.* (emphasis added). The District Court, however, construed the complaint as raising a *Bivens* claim, presumably under the Cruel and Unusual Punishments Clause of the Eighth Amendment. Respondent accepted this theory of liability, and he has never sought relief on any other ground. This is somewhat ironic, because the heightened "deliberate indifference" standard of Eighth Amendment liability, *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), would make it considerably more difficult for respondent to prevail than on a theory of ordinary negligence, see, *e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference describes a state of mind more blameworthy than negligence").
>
> This also makes respondent's situation altogether different from *Bivens*, in which we found alternative state tort remedies to be "inconsistent or even hostile" to a remedy inferred from the Fourth Amendment. 403 U.S., at 393-394, 91 S.Ct. 1999. When a federal officer appears at the door and requests entry, one cannot always be expected to resist. See *id.*, at 394, 91 S.Ct. 1999 ("[A] claim of authority to enter is likely to unlock the door"). Yet lack of resistance alone might foreclose a cause of action in trespass or privacy. *Ibid.* Therefore, we reasoned in *Bivens* that other than an implied constitutional tort remedy, "there remain[ed] ⋯ but the alternative of resistance, which may amount to a crime." *Id.*, at 395, 91 S.Ct. 1999 (internal quotation marks and citation omitted). Such logic does not apply to respondent, whose claim of negligence or deliberate indifference requires no resistance to official action, and whose lack of alternative tort remedies was due solely to strategic choice. [Footnote omitted].
>
> Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program (ARP). See 28 CFR § 542.10 (2001) (explaining ARP as providing "a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement"). This program provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring. And unlike the Bivens remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally.

<u>Id.</u> at 72-74.

The issue – *Bivens* doctrine application in the context of claims brought by a federal detainee

against a privately operated federal prison and employees thereof – was relatively recently discussed by the

Court of Appeals for the Ninth Circuit.  <u>Agyeman v. Corrections Corp. of America</u>, 390 F.3d 1101 (9th Cir.

2004).  Finding that Agyeman was entitled to appointment of counsel due to the complexity of the issues

presented in the case, the Ninth Circuit wrote:

> Agyeman's case brought against Corrections Corporation and its employees, had a triple complexity. First, to the extent that Agyeman sought to hold Corrections Corporation itself liable, the case could not be brought under *Bivens*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619, since Corrections Corporation is a private corporation. *See Correctional Services Corp. v. Malesko*, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (declining to apply *Bivens* to private corporations). Rather, Agyeman could have brought a suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680; *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). Alternatively, he could have sued the corporation directly in tort and he could have sought injunctive relief. *See Malesko*, 534 U.S. at 72-74, 122 S.Ct. 515 (discussing alternative options for federal prisoners in private prisons). Agyeman would have had the option of bringing this suit against Corrections Corporation by joining the latter as a defendant in the suit under the Federal Tort Claims Act and requesting the district court to exercise supplemental jurisdiction over this defendant. 28 U.S.C. § 1367; *see* Lester S. Jason & Robert C. Longstreth, *Handling Federal Tort Claims* §§ 6.02-.03 (2004).
>
> Second, to the extent that Agyeman sought recovery from individual employees of the Corrections Corporation, the case had to brought as a *Bivens* action. *Bivens*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619. Third, to the extent that Agyeman's status as a person being held on noncriminal charges enhanced his rights beyond those of an ordinary criminal prisoner, an issue was presented whether the standard Bureau of Prison rules governing the transfer of prison inmates were applicable to him.
>
> The district court in its ruling on his second amended complaint did inform Agyeman of the peculiar position of the Corrections Corporation; but the court did not give him the opportunity to use the information. As to the nature of his action against the employees, not only did Agyeman misconceive it to be a section 1983 action against state employees, but neither the magistrate judge nor the district judge caught the error. Only on appeal was it noted by counsel for Corrections Corporation.

<u>Agyeman v. Corrections Corp. of America</u>, 390 F.3d 1101, 1103-04 (9th Cir. 2004)

The statutes and cases noted above are instructive in resolving the issue of jurisdiction of this court

over the claims raised and defendants named in Plaintiff's Complaint.  Clearly, the federal agencies are

immune from suit and any monetary liability.  See 28 U.S.C. §2679.  The court lacks jurisdiction over the

Federal Defendants (the Bureau of Immigration and Customs Enforcement and the U.S. Department of

Health Services), and the court must grant their motion to dismiss the claims Plaintiff has brought against

them.  Under <u>Malesko</u>, Plaintiff similarly cannot maintain an action for money damages against the private

corporation which manages and operates the NDC.  Moreover, any individuals employees of the NDC

named in their official capacity cannot be sued pursuant to 28 U.S.C. § 1983 and can only remain in the

1   case as a necessary for injunctive relief granted.  <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985).  Accordingly,

2   the court must dismiss Plaintiff's § 1983 claims against the Compass Group USA, Inc., the Northwest

3   Detention Center, the Geo Corporation and any similar claims for monetary damages made against

4   employees of these entities named in their official capacity.   To the extent noted above, defendants'

5   motions to dismiss claims against the federal government and the private entities which operate and

6   manage the NDC should be granted.

7           The undersigned also notes that claims brought by Mr. Hopper pursuant to the Federal Tort Claims

8   Act ("FTCA") should also be dismissed for lack of jurisdiction.  First, the only proper federal defendant in

9   a civil action under the FTCA is the United States of America. 28 U.S.C. § 2679(b)(1).  Second, the FTCA

10  specifically provides that an action shall not be instituted upon a claim against the United States for money

11  damages unless the claimant first exhausts his administrative remedies. See 28 U.S.C. § 2875(a). The

12  administrative claim requirement mandates that a plaintiff present a claim to the appropriate federal agency

13  within two years of the date it accrues. <u>Staple v. United States</u>, 740 F.2d 766, 768 (9th Cir. 1984). Thus,

14  to the extent that Plaintiff seeks to pursue claims under the FTCA, he must present a proper administrative

15  claim to the appropriate agency. Plaintiffs has not shown that he presented a valid claim to any Federal

16  agency. Therefore, Plaintiff's FTCA claims must be dismissed, without prejudice, for lack of subject matter

17  jurisdiction.

18  ***B. INMATES EIGHTH AMENDMENT AND MEDICAL CARE***

19          The only cognizable claims remaining are those based on the allegations that certain individuals,

20  acting in their personal capacities, have acted in such a manner as to violate Mr. Hopper's U.S.

21  Constitutional Rights, brought pursuant to 28 U.S.C. § 1983.   Accordingly the final discussion applies to

22  the individuals (Marvel Morrison, Ms. Shines, Mr. Wilson, Warden G. Wigen, Lt. Rogge, and Mr. Smith)

23  named in the Complaint.  In addition, the court will discuss these claims as it applies to the additional

24  individual defendants named in Plaintiff's Amended Complaint (which was submitted to the court on July

25  5, 2006), including, Ms. Overbay, Deanna Gephardt, Mr. McHatton, Michael Melendez, and Gary

26  Garman.

27

28          As noted above, in order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1)

REPORT AND RECOMMENDATION
Page - 6

the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327 (1986).  Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present.  Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

Eighth amendment rights are violated if a person in custody is treated with deliberate indifference to his or her serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Jones v. Johnson, 791 F.2d 769, 771 (9th Cir. 1986).  The indifference to medical needs must be substantial; a constitutional violation is not established by negligence or "an inadvertent failure to provide adequate medical care."  Estelle, 429 U.S. at 105-106; see Anthony v. Dowdle, 853 F.2d 741, 743 (9th Cir. 1988).  Similarly, a difference in opinion as to diagnosis or treatment does not establish a constitutional violation.  Shields v. Kunkle, 442 F.2d 409, 410 (9th Cir. 1971).

Plaintiff claims the individuals named above have denied him a diet consistent with the medical staff's directions taking into consideration his past medical history and heart/cholesterol condition. Specifically, Mr. Hopper argues he is entitled to a "low sodium, low fat, low cholesterol, high fiber, with a fruit" diet, and instead he is given a diet with lots of whitebread, margarine, mayonnaise, gravies, soy meat, "mystery meat", egg matter, and beans with high sodiums.  Plaintiff complains that he is given "jello" as a substitute for fruit.  Plaintiff alleges he has gained weight, his cholesterol levels have risen, he is constipated and experiences bleeding and vision problems.   Plaintiff maintains that he has not been able to see a dentist for "general pressing care," and he needs access to his hypoallergenic cosmetics, which do not give his skin rashes.

After reviewing the factual statements, declarations and arguments presented by the parties, this court concludes as a matter of law plaintiff's claims should be dismissed.  Mr. Hopper has not presented a sufficiently serious medical need to support an Eighth Amendment claim.  At the time his Complaint was filed Mr. Hopper had been housed at the NDC for a five month period.  This relatively short time period and exposure to an allegedly improper diet does not support a constitutional violation.  Moreover,  by the time he filed his Amended Complaint, Mr. Hopper informs the court that "the food is getting better."  Fish,

corn dogs and veal patties have been added to his diet, and wheat bread is exclusive. Plaintiff indicates in his Amended Complaint that the improvement in the variety of food in his diet was a result of his original complaint. Similarly, Mr. Hopper's claim that he is allergic to the cosmetics being sold at the institution and the claim that he is being denied his personal items, including his hypoallergenic cosmetics does not support an Eighth Amendment claim.

Based on the facts alleged in the Complaint and the Amended Complaint, the undersigned finds Plaintiff has failed to present a cognizable claim. He has failed to adequately allege a violation of such serious nature to arguably support a Eighth Amendment or U.S. Constitutional claim. Plaintiff's claims should be dismissed. The Canteen Defendants' motion to dismiss should be granted.

## CONCLUSION

Based on the foregoing discussion, the Court should GRANT defendants' motions to dismiss the claims brought by Mr. Hopper. The Complaint and Amended Complaint, when reviewed by the court do not support any cognizable claims for injunction or for money damages. Plaintiff's causes of action should be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **October 6, 2006**, as noted in the caption.

DATED this 13th day of September, 2006.

/s/ J. Kelley Arnold
J. Kelley Arnold
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 8